UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        CRIM. CASE NO. 16-20597

Plaintiff,

v.        PAUL D. BORMAN
        UNITED STATES DISTRICT JUDGE

DEREK MICHAEL TAGG,        **FILED UNDER SEAL**

Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO RESIDENTIAL SEARCH WARRANT (ECF No. 38)**

On February 21, 2017, this Court held a hearing on Defendant Derek Tagg's Motion to Suppress Evidence seized pursuant to a September 15, 2015 search warrant executed at his residence. Defendant contends that the search warrant affidavit did not establish probable cause to search his residence, and accordingly the search violated Defendant's rights under the Fourth Amendment to the Constitution and the evidence seized should be suppressed. At the conclusion of the argument-only hearing the Court ordered the parties to submit supplemental briefing on the Fourth Amendment issue. Those briefs were filed on March 7,

1

2017.

The Fourth Amendment provides, in pertinent part, that "no warrants shall issue, but upon probable cause . . . particularly describing the place to be searched and the persons or things to be seized." U.S. Constitution Amendment IV. Supreme Court precedent establishes that "[T]he physical entry of the house is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980).

The Government concedes that this search warrant affidavit does not allege that Defendant Tagg clicked on any links to access any child pornography (CP) via his computer.[1] February 21, 2017 Hearing Transcript P. 17 The Government contends, however, that there was probably cause to search Tagg's residence because Defendant accessed his computer with intent to view child pornography, in violation of Title 18 U.S.C. §2252A(a)(5)(B). That provision states in pertinent

---

[1] Title 18 U.S.C. §2256(8) defines child pornography:

"child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where –
(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or
(C) such visual depiction has been created, adopted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

part:

> (a) any person who –
> 
> . . . .
> 
> (B) . . . knowingly . . . accesses with intent to view any . . . material that contains an image of child pornography that has been . . . transported using any means or facility of interstate . . . commerce by any means including by computer . . .
> 
> . . .
> 
> Shall be punished.

Defendant contends that the critical phrase in the statute, that the defendant access "with intent" to view . . . child pornography" requires "the Government to prove specific criminal intent to view CP. . . . It is not enough that Tagg merely accessed the Playpen website, or viewed the child erotica on its homepage; he needed to have exhibited an intent to access the site <u>with the specific purpose of viewing illegal child pornography</u>." Defendant's Supplemental Brief, (ECF No. 52, p.2) (emphasis in original).

Defendant contends that the Government affidavit in support of the search warrant falls far short of establishing probable cause that Defendant intended to access with intent to view child pornography:

> At best, the affidavit establishes Tagg intended to view child erotica. The affidavit alleges he logged into a single website that had a homepage showing a suggestive photograph (not CP), and then accessed three posts containing links that, <u>if he had clicked on them</u>, purportedly contained CP. The Government concedes

3

> the affidavit does not allege Tagg clicked on these links, nor does it provide any other reason to believe Tagg intended to view CP.

Defendant's Supplemental Brief, (ECF No. 52, p.3) (emphasis in original).

Child erotica is not child pornography. Indeed, the instant search warrant affidavit "Definitions" section states:

> "Child Erotica" as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, legally obscene or that do not necessarily depict minors in sexually explicit conduct.

Tagg search warrant affidavit, Attachment 1 of the Government's Response in Opposition to Defendant's Motion to Suppress Evidence Seized Pursuant to Residential Search Warrant (ECF No. 38), Page 5 ¶ 6(c)

Child Pornography as defined in Title 18 U.S.C. §2256(8), set forth in footnote 1, *supra*, and is repeated in pertinent part in this search warrant affidavit at Page 5 ¶ 6(d):

> "Child Pornography" as used herein, is defined in 18 U.S.C. §2256(8) as any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor egaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

A 2015 decision of the United States Court of Appeals for the Tenth Circuit, acknowledged that viewing child erotica is not illegal. *United States v. Edwards*, 813 F.3d 953, 961 (10th Cir. 2015). The three judge panel was composed of Judges Carolyn McHugh (author), then-Judge Neil Gorsuch, and Chief Judge Timothy Tymkovich.

In *Edwards*, the Tenth Circuit rejected the Government argument that the defendant's uploading of hundreds of child erotica images to a website, and even his comments expressing his sexual attraction to children supported probable cause to search his home for child pornography.[2] *Id.* At 969. Indeed, in the instant case there is nothing in the search warrant affidavit stating that Defendant Tagg uploaded hundreds of child erotica images to a website, or made comments expressing his sexual attraction to children. The Tenth Circuit opinion noted:

> The government concedes that agents investigating the website did not observe Mr. Edwards posting or viewing child pornography as defined in 18 U.S.C. §2256(8); rather, the government describes the photographs he uploaded as "child erotica." In turn, the search warrant affidavit defined child erotica as "materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene

---

[2] The Tenth Circuit, despite concluding that "the affidavit failed to provide sufficient probably cause to establish a nexus between suspected criminal activity and the place to be searched" (citation omitted), did not suppress the evidence seized in the search, applying the "good faith" exception to the exclusionary rule established in *United States v. Leon*, 104 S. Ct. 3405 (1984). *Edwards* at 960. This issue is discussed, *infra*.

5

> or that do not necessarily depict minors in sexually explicit poses or positions."

*Edwards*, 813 F.3d at 958. (emphasis added)

Attachment 1, Government's Response in Opposition to Defendant's Motion to Suppress Evidence Seized Pursuant to Residential Search Warrant. (ECF No. 38)

The statute at issue, 18 U.S.C. §2252a(5)(B) states in pertinent part, "knowingly accesses with intent to view child pornography," a specific intent crime. The Court concludes that probable cause for violation of this statute is not set forth in the instant affidavit.

In *Edwards*, the Tenth Circuit rejected "the law-enforcement affiant's opinion that people who possess child pornography are also likely to possess child erotica," holding that "the affidavit failed to provide sufficient probable cause to establish "a nexus between suspected criminal activity and the place to be searched." 813 F.3d at 960 (citation omitted). This Court agrees with that holding.

The *Edwards* decision differentiated that case from the previous Tenth Circuit decision in *United States v. Haymond*, 672 F.3d 948, 959 (10th Cir. 2012) where the affidavit described a Lime Wire "user with an IP address linked to Mr. Haymond's residence who "had numerous files of child pornography available for other Live Wire users to access, view and download. This information would cause a reasonable person to believe evidence of child pornography would be

recovered from Mr. Raymond's residence." No such situation was present in *Edwards*, or in the instant case.

In the instant case the affiant for the search warrant, Task Force Officer Steven Showers, does not allege that Defendant clicked on any links and viewed child pornography.[3] The Court finds this of great significance.

Showers' search warrant affidavit of September 15, 2015, provided to the Magistrate Judge states:

> On the main page of the site, located to either side of the site name were two images depicting partially clothed prepubescent girls with their legs spread apart. . . .

Showers' affidavit in support of application for search warrant, P. 17, ¶13, Attachment 1, Government's Response in Opposition to Defendant's Motion to Suppress Evidence Seized Pursuant to Residential Search Warrant. (ECF No. 38)

---

[3] The instant application for a search warrant lists the applicant as FBI Task Force Officer Steven Showers. The affidavit is signed by Task Force Officer Detective Steven Showers, Federal Bureau of Investigation. Affidavit in support of application for search warrant, P.40. Showers' affidavit sets forth, at p.3 ¶ 5 ". . . my experience, training and background as a Special Agent (SA) with the FBI." At the Court's February 21, 2017 evidentiary hearing, the Assistant United States Attorney initially introduced him as Special Agent Seven Showers with the FBI. February 21, 2017 Hearing transcript P. 3.
   This is not true. Steven Showers is a City of Warren Police Department Detective assigned to the FBI Task Force. He is not an FBI Special Agent; he is a Task Force Agent (TFA)
   The Court does not assign any weight to the affiant's misdesignation nor question his qualifications to be an affiant in reaching its conclusion, but points it out to guide further TFA federal search warrant applications.

In fact, after February 19, 2015, the main page of the site did not contain those two images: the site contained one image depicting a fully- clothed prepubescent girl with her legs crossed. The Government acknowledges that it became aware of this significant change in the main website image on February 19, 2015.

> In the evening of February 19, 2015, the FBI executed a search at the Naples, Florida, home of the website administrator and apprehended him. Ex.1, p.23. Postings by the administrator of Website A indicate that during the day of February 19, 2015, before he was apprehended, the administrator altered the site logo and the images that appeared on it. A printout that shows the site logo as of its alteration by the administrator on February 19, 2015, is attached as Exhibit 4 and 4A to this response.

Government's Brief in Support of its Response in Opposition to Defendant's Motion to Suppress Evidence Seized Pursuant to NIT Search Warrant. (ECF No. 37, Page 22)

The Court finds that the images on both the pre-February 19, 2015 main page and the post-February 19, 2015 main page were both child erotica – not child pornography. The Court finds disturbing that in the instant search warrant affidavit, filed September 15, 2015, almost seven months after February, the affiant chose to describe only the pre-February 19, 2015 website main page featuring the two images, and did not mention or describe the single image found

on the post-February 19, 2015 website main page.

**Summary**

The Court finds significant, pp. 24-26 of the search warrant affidavit discussing Defendant's browsing of Website A after logging in. While the website contains hyperlinks and links, and although Defendant accessed a post that contained a link to child pornography, there is no Governmental averment that Defendant ever clicked on a link that accessed child pornography. Indeed, the Assistant United States Attorney acknowledged at the February 21, 2017 hearing that the Defendant never clicked on the link to view an image depicting child pornography. Hearing transcript, February 21, 2017, Pages 16-17.

The Government contends that although Defendant did not access links to CP, Defendant's conduct in utilizing the TOR browser that hides Internet activity, gaining access to the Playpen website, and registering for that site (inputting an email address, a user name, and a password) was sufficient to establish the specific intent required under the "intent to access" statute. The Court disagrees.

The Government's contention, that it meets the probable cause standard is required under 18 U.S.C. §2252A(a)(5)(B), was not validated by Defendant's conduct on the website. Indeed, any such intent was undermined by the facts relating to Defendant's conduct in the Government's affidavit in support of the

9

search warrant. The affidavit states at p.24 ¶28; Defendant Tagg "actively logged into the website for a total of 5 hours, 7 minutes between January 19-March 4, 2015." Yet the affidavit does not allege that during that extended time period, Defendant even once clicked on a link and viewed child pornography. Thus, when Defendant had the opportunity, time and again for hours, to click on and view child pornography, he did not.

**The Good Faith Exception**

The Court rejects the Government's argument that "even if the Court finds that the residential search warrant is deficient, the evidence seized pursuant to that search warrant is still admissible under the good faith exception to the exclusionary rule," citing *Herring v. United States*, 129 S. Ct. 695 (2009). Government Supplemental Brief Regarding D.E. 29. (ECF No. 51, p.8) The Court disagrees.

A key question in whether to apply the exclusionary rule is whether the police acted in objectively reasonable reliance on the subsequently invalidated search warrant, to wit "good faith." *Herring*, 129 S. Ct. at 701 (citations omitted). The Court concludes that the good faith exception does not apply.

TFA affiant Showers sets forth his experience in child pornography cases in his affidavit:

10

Page 1, ¶1:

> I have been a Police Detective for approximately five years [sic] have investigated various crimes ... including child pornography ... I am currently assigned to the Macomb County Computer Enforcement (MACE) task force, which investigates criminal violations of both federal and state child pornography and child exploitation laws.

Page 1, ¶2:

> ... I have gained experience through training and everyday work relating to conducting these types of investigations. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography ...

The Government affiant was clearly aware that his affidavit did not aver that Defendant had ever clicked on and viewed child pornography. The affiant, as set forth in his affidavit "Definitions" at Page 5 ¶6d, was well aware that child erotica was not illegal child pornography.

This case involved an image of one, or at most two images of child erotica, not child pornography. The Court concludes that it should have been crystal clear to the affiant that there was not probable cause to secure this search warrant.

## Conclusion

There is an absence of facts in the search warrant affidavit submitted by TFA Showers, who is part of a Task Force, that Defendant had ever clicked on and viewed child pornography on this website. This was confirmed by the Assistant United States Attorney at the hearing. The Court concludes that presenting such an affidavit for a search warrant of a house was reckless.

In *Herring*, the Supreme Court pointed out, that "the exclusionary rule was crafted to curb police rather than judicial misconduct." *Herring* 129 S. Ct. at 701. In *United States* v. *Master,* 614 F3rd 236 (6th Cir. 2010), the United States Court of Appeals for the Sixth Circuit, citing *Herring*, reaffirmed that:

> The exclusionary rule's purpose is... "to deter deliberate, reckless, or grossly negligent police conduct..."

*Master* at 242, citing *Herring* at 702.

The Court concludes that in the instant case, there was reckless police conduct that requires suppression of the evidence seized at Defendant's house, and further concludes that the deterrent effect of suppression in this case is substantial, and outweighs any harm to the justice system. *Herring* 129 S. Ct. at 704.

Accordingly, the Court grants the Defendant's Motion to Suppress the evidence seized pursuant to the illegal search of 27834 Newport Drive, Warren, MI 48088.

SO ORDERED.

DATED: APR 1 4 2017

_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE